IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**KIEASHIA DESHAWN EDWELL,**      )
                                  )
      Plaintiff,             )
                                  )
    v.                          )   2:12cv1774
                                  )   **Electronic Filing**
**CAROLYN W. COLVIN,**[1]         )
Acting Commissioner of Social Security,  )
                                  )
      Defendant.             )

## MEMORANDUM OPINION

    Plaintiff commenced this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). The record was developed fully at the administrative level and the parties have filed cross motions for summary judgment. For the reasons set forth below, plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and final judgment will be entered against plaintiff and in favor of the Commissioner.

    The Commissioner's findings and conclusions leading to a determination that a claimant is not "disabled" must be supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on August 13, 2013). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

1988). The task of this court in reviewing the decision below is to "determine whether there is substantial evidence on the record to support the ALJ's decision." Burnett v. Commissioner of Social Security, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence "means that such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Aphel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

As the fact finder, the administrative law judge ("ALJ") has an obligation to weight all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. Plummer, 186 F.3d at 429. This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). And where the findings of fact leading to the decision of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2000). These well-established principles preclude a reversal or remand of the Commissioner's decision here because the record contains substantial evidence to support it.

Plaintiff seeks review of the ALJ's May 9, 2011, decision denying her application for benefits pursuant to a finding that although plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from the severe impairment rheumatoid arthritis, plaintiff retains the residual functional capacity to perform the demands of a limited range of light work that will accommodate her need for (1) no crawling or climbing ropes, ladders or scaffolds; (2) no working around unprotected heights or around moving machinery; (3) only

occasional balancing, stooping, kneeling and crouching; (4) only occasional interaction with the public; and (5) no frequent repetitive hand movements or operation of hand controls.

A vocational expert identified the positions of night guard, night cleaner, and packer as jobs that would accommodate these limitations and restrictions. The appeals council denied plaintiff's request for review and the instant action followed.

Plaintiff was 22 years of age at her alleged on-set date of July 1, 2009, and 24 years of age when the ALJ issued his decision on May 9, 2011. She had a high school education and three years of college and was trained as a medical assistant. She had worked as a cashier, customer service representative and a medical assistant.

Plaintiff lives in a first-floor apartment with her five year old daughter. Just prior to the hearing plaintiff began part-time work (10 hours per week) as a day care attendant. Plaintiff generally had been working two hours a day taking care of two and three year olds. Plaintiff takes care of her daughter on a regular basis.

Plaintiff explained to the ALJ that she had been diagnosed with rheumatoid arthritis and this impairment makes activities during the day very difficult. R. 34. Plaintiff undergoes regular blood monitoring because of a low white-cell count. R. 35. Plaintiff's treating rheumatologist, Dr. Bass, is concerned about a diagnosis of lupus which is one reason he regularly examines plaintiff and monitors her through blood work. R. 35.

Plaintiff suffers a lot of pain in her knees, ankles, hips and the joints of her hands, all of which causes her to be very slow in completing the activities of daily living, housework and care of her daughter. R. 34. She has been prescribed and wears a brace on her right wrist to counter the swelling and pain in that area. R. 42.

Plaintiff takes eight medications and a number of these cause side-effects, including suppression of her immune system, dizziness, fatigue, headaches and blurred vision. R. 39. She receives help with daily activities, household chores and childrearing responsibilities from her sister and her friend. R. 41.

The ALJ considered plaintiff's impairment and the numerous limitations asserted by plaintiff and determined that while the limitations could reasonably be expected to be caused by rheumatoid arthritis, plaintiff's claims of disabling intensity were "not credible to the extent they were inconsistent with the above residual functional capacity." R. 19. In accordance with the RFCA and the vocational expert's testimony, the ALF determined that plaintiff was not disabled under the Act.

Plaintiff contends that the ALJ's decision was not supported by substantial evidence. Her argument is twofold. First, the ALJ failed to find lupus as a severe impairment. Second, the ALJ failed to order a consultative examination to determine if she had lupus after her counsel requested that such an examination be ordered at the hearing. The Commissioner contends the record contains substantial evidence to support the ALJ's decision.

The record contains substantial evidence to support the ALJ's findings and conclusions. The ALJ's decision to limit plaintiff's severe impairment to rheumatoid arthritis was well within his discretion. Similarly, the ALJ's determination that the record was adequately developed and a consultative examination to determine whether plaintiff has lupus was not warranted stands on solid footing.

Plaintiff's development of rheumatoid arthritis and its progression and response to treatment were well documented. After clinical and diagnostic testing plaintiff's treating rheumatologist, Dr. Bass, M.D., concluded that while there was reason to be "on the lookout for

the possible development of lupus or connective tissue disease-like symptoms" and plaintiff "may actually be someone with Sjogren syndrome and inflammatory arthritis, [her] clinical diagnosis remains rheumatoid arthritis." R. 207. Further, plaintiff in her own words explained that Dr. Bass had not diagnosed her with lupus but instead was "concerned about a diagnosis of lupus" which was part of the reason Dr. Bass examines plaintiff "from head to toe" and tests her blood regularly. R. 35. All other references in the medical evidence originate from plaintiff's visit to the emergency room on one occasion and her subjective reports of her medical history in conjunction therewith. R. 264, 295, 301. Thus, the medical evidence as a whole contained substantial evidence to support the ALJ's determination that the formal diagnosis for plaintiff's impairment was rheumatoid arthritis.

Moreover, plaintiff has failed to explain or even elude to how the inclusion of a diagnosis of lupus would have changed the ALJ's determination on plaintiff's claimed symptoms and limitations from her autoimmune disorder. Plaintiff raised each of the resulting symptoms and limitations from the disorder and her eight medications and the ALJ considered each of them singularly and in combination. There is no basis to assume that calling the disorder "lupus" or adding that diagnosis as an additional cause of the disorder would have changed the ALJ's assessments and conclusions about plaintiff's ability to do work-related activities. Plaintiff has not demonstrated that the reasoning of the ALJ leading to those assessments and conclusions (1) was without substantial evidence or (2) otherwise exceeded his substantial discretion in fact-finding. Consequently, the ALJ cannot be found to have erred by referencing plaintiff's disorder by its formal diagnosis: rheumatoid arthritis.

Plaintiff's second ground for error likewise is without merit. Plaintiff testified that Dr. Bass examined and monitored her vigilantly for the onset of a connective tissue disorder such a

5

lupus. The medical records demonstrated that Dr. Bass examined and tested plaintiff regularly. Dr. Bass is a rheumatologist who is quite familiar with plaintiff's medical history and status. He had examined plaintiff as recently as January 27, 2011, which was 5 weeks prior to the hearing. R. 342-343. Given this regular monitoring and testing which to date had been aimed at detecting lupus or another similar connective tissue disorder, and the lack of any affirmative findings to support the formal onset of such a disease, the ALJ cannot be faulted for declining to order a consultative examination to determine whether plaintiff had lupus. Such an undertaking merely would have duplicated what Dr. Bass was doing on a systematic basis based on nothing more than counsel's desire to take up such an inquiry.

Moreover, this consistent monitoring and testing by Dr. Bass when combined with his formal diagnosis of plaintiff's disorder provided substantial evidence to support the ALJ's determination that a consultative examination to diagnose lupus was not warranted. As explained above, nature of plaintiff's disorder was sufficiently identified and described in the medical records, plaintiff identified the symptoms and limitations that affected her abilities to do work-related activities and the ALJ evaluated the record and rendered a decision that was well within his discretion. Consequently, the ALJ cannot be found to have erred by failing to accommodate a request for a consultative examination that merely would have placed another medical label on what was already in the record and under consideration.

As previously discussed, an ALJ is permitted to make assessments about and assign weight to the evidence before him, so long as the determinations are appropriately explained and supported by substantial evidence. The ALJ did so here in evaluating the medical and other evidence and then provided the vocational expert with the appropriate hypotheticals in line with

6

his discretionary interpretation of the evidence.  In short, the ALJ's findings leading to a determination that plaintiff was not disabled were supported by substantial evidence.

Date:  September 15, 2014

s/David Stewart Cercone<br>David Stewart Cercone<br>United States District Judge

cc:     Zenford A. Mitchell, Esquire
       Colin Callahan, Esquire

       (*Via CM/ECF Electronic Mail*)